ALTHA RHODES et al., Appellants, v. CHARLES C. BELL and F. W. PLOGER.

Division Two, July 19, 1910.

1. **LEGISLATIVE AND JUDICIAL POWERS: Separation: How Distinguished.** It is not always an easy matter to determine what powers are judicial and what legislative, within the meaning of the Constitution which prohibits the exercise by one department of powers properly belonging to the other, since the Constitution itself gives no definition of these powers and lays down no rule by which the distinguishing characteristics of either may be determined. But generally it is a legislative power to prescribe a general rule, and a judicial power to

decide upon the rights of parties under the prescribed rule. But the purpose of the separation and the prohibition should always be kept in view, and that was to preserve the liberties of the people, and it should also be kept in view that the legislative department has large discretion in determining through what means its will shall be executed; and where its specification of a court as its avenue through which a limited legislative power may be administered, does not encroach upon the judiciary, and is in line with long practice and custom on its part, it will not be held to be invalid as a delegation of legislative power to the judicial department.

2. ————: *To Change Terms of Court.* The act of the Legislature (Laws 1866, p. 86, Sec. 11), fixing an April term of the probate court, and requiring it to begin on the second Monday in April, and providing that the judge thereof might, by order of record and due notice, change the terms to such times as he should deem for the convenience of the citizens of the county, was not such a delegation of legislative power to the court as made the act invalid or rendered illegal proceedings regularly done at a term fixed by the judge to begin on the fourth Monday in April.

3. ————: ————: *Universal Acquiescence of Bar.* The statutes for many years gave to county and probate courts power to change the date for the beginning of their terms, and thousands of titles rest upon the validity of those laws, and the fact that their validity has never before been questioned by a proceeding in the Supreme Court and it seems to have been the universal opinion of the courts and the bar that they were valid, is a very pregnant circumstance, and persuasive evidence of their validity and constitutionality.

4. **ORDER OF PUBLICATION.** An order of publication is a substituted process for the ordinary writ of summons.

5. ————: *Changed to Conform to Change in Law.* The *order of publication*, in response to an application to sell real estate to pay decedent's debts, was made returnable to April 26th, and at the time it was made the next term of the probate court was, by the order of court, to begin on April 26th. Thereafter the Legislature passed an act, which went into effect at once, requiring the next term to begin on the first Monday of April, which was April 5th, and directing all writs and processes, theretofore made returnable at the April term, to be returned on the first Monday in April; and the clerk changed the order of publication so as to make it returnable on April 5th, instead of April 26th, and in that amended form it was published. *Held, first,* that it was perfectly competent for the Legislature

to change the term of court; and to provide that process already issued or to be issued returnable to the fourth Monday of April, should be returnable to the first Monday; *second*, the law must be construed as written into the order of publication, theretofore made, and the change of April 26th to April 5th was not the clerk's change, but the Legislature's alteration; and *third*, while the clerk had no authority to change the record of the court (and that is not shown), it was perfectly proper to make the order returnable in exact conformity to the statute.

6. **ORDER OF SALE: No Mention of Amount of Debts.** It was not necessary, under sec. 26, page 97, of Wagner's Statutes 1872, that the order of sale, directing the sale by the administrator of decedent's land to pay debts, should state or find the amount of money necessary to be raised by the sale of real estate. It was only necessary for the court to find that the personal assets were not sufficient to pay the debts due and owing by said estate, and to order a sale of the land, or so much thereof as was necessary to pay the debts.

7. ———: **From Public to Private Sale: No Notice.** A renewal order to sell real estate to pay debts may change the terms of sale from a private to a public sale without notice to the heirs.

8. ———: ———: **Judicial Sales: Administrators' Sales.** Administrators' sales under orders of the probate court are judicial sales, and in contemplation of law are made by the court itself, and there is no reason why the court may not in a proper case modify the terms of sale.

9. ———: **Describing Land.** Where the order directing the administrator to sell lands to pay debts specifically described the lands, it was not necessary to set forth in an order adjourning the sale to a subsequent date, a full description of the lands, or any other description than "the real estate belonging to said estate and remaining unsold."

10. ———: **Adjournment.** The probate court, having once acquired jurisdiction to sell estate lands to pay debts, by proper petition, notice and order of sale describing them, may adjourn or continue the sale to a subsequent time. The sale is not required to be made at a particular term.

11. ———: ———: **Cured by Approval.** Any irregularity in a continuance of the sale of lands to pay estate debts, or in the conduct thereof, occurring after the probate court has acquired jurisdiction and made a valid order of sale, is cured by an order approving the sale.

Appeal from Stoddard Circuit Court.—*Hon. J. L. Fort,* Judge.

AFFIRMED.

*John C. Brown* for appellants.

(1) The order of publication by which the court sought to acquire jurisdiction of the heirs was void, because not made returnable at the time required by law. Wagner's Stats., sec. 25, p. 96; Laws 1869, p. 193; Laws 1865, sec. 11, p. 86; Holladay v. Cooper, 3 Mo. 286; Haws v. Clark, 37 Ia. 355; Calkins v. Miller, 75 N. W. (Neb.) 1108; Young v. Downey, 145 Mo. 260. (2) Section 11, Act of March 19, 1866 (Laws 1865-6, p. 86), purporting to grant to the probate court of Stoddard county the right to change the dates for holding its regular terms, is unconstitutional and void, because it delegates legislative powers and requires legislative powers to be performed by a person holding a judicial position. Constitution of 1865, art. 3, and art. 4, sec. 1, W. S., p. 44; State v. Field, 17 Mo. 529; State ex rel. v. Ross, 118 Mo. 46; Doss v. Wagner, 3 Tex. 515; State ex rel. v. Young, 9 N. W. 737; Stephens v. Truman, 59 Pac. 397; Maxwell v. Baldwin, 40 Md. 273; Hutcherson v. Leenbock, 74 Pac. 598; Glasspell v. Jamestown, 88 N. W. 1023; Dent v. U. S., 71 Pac. 921; State v. Rogers, 73 N. E. 461. (3) The order of publication by which the probate court sought to acquire jurisdiction of the heirs is void, because it was not published as made, but in lieu thereof a different order, returnable at a different date, was substituted and published by the probate clerk. Otis v. Epperson, 88 Mo. 131; Kelly v. Murdagh, 184 Mo. 377. (4) All the so-called orders of sale upon which respondents' title is based are void, because they fail to contain any finding or recital of the amount necessary to be raised by a sale of real estate. Wagner's Stats., sec. 26, p. 97; Young v. Young, 80 Tenn. (Lea) 335; Williams v. Bollinger, 122 Mo. App. 450; Noe v. Mountry, 170 Ill. 169; Redman v. Adams, 88 Mo. App. 534. (5) The renewal order of sale made March 27, 1877, upon

which respondents' title is based, is void, because the court illegally changed the terms of sale from a private to a public sale without notice to the heirs. Wagner's Stats., sec. 34, p. 98; Ault v. Bradley, 191 Mo. 729; George v. Middough, 62 Mo. 551; Capen v. Garrison, 193 Mo. 335; Jefferson Co. v. Cowan, 54 Mo. 234; Evans v. Snyder, 64 Mo. 518. (6) The administrator's sale under which respondents claim title is void, because the sale of the land in controversy was without cause illegally adjourned from April 25, to September 5, 1877, by an order which does not describe the land. Melton v. Fitch, 125 Mo. 281; Roberts v. Thomason, 174 Mo. 386; Walser v. Gilchrist, 220 Mo. 314.

*Oliver & Oliver* and *Wammack & Welborn* for respondents.

(1) The point made by appellants that the original order of publication is void ⌄is without merit. Overton v. Johnson, 17 Mo. 445; Camden v. Plain, 91 Mo. 130; Adcock v. Lecompt, 66 Mo. 43; Laws 1875, p. 425; Shipp v. Klinger, 54 Mo. 239. (2) So likewise is their contention that the order of publication, as published, was void for the reason that it was changed from the original order. Jasper Co. v. Wadlow, 82 Mo. 172; Laws 1875, p. 425. (3) The orders for the sale of real estate could not and need not contain any finding or recital of the amount necessary to pay the decedent's debts. Overton v. Johnson, 17 Mo. 445; Mount v. Valley, 19 Mo. 621; Grayson v. Weddle, 63 Mo. 523. (4) The probate court had ample authority, in making the renewal order of sale on March 27, 1877, to change the terms of the sale from a private to a public sale. Tutt v. Zenir, 51 Mo. 431. (5) The order adjourning the sale from April 25, to September 5, 1877, did not need to describe the lands. Camden v. Plain, 91 Mo. 130. (6) Our statutes have always vested jurisdiction over the administration of estates and the

sale of lands for the payment of the debts of a de-
cedent, in our probate courts and courts of like juris-
diction. All the orders, proceedings and judgments of
these courts in such matters are as conclusive as are
the judgments of a court of general jurisdiction. In a
collateral proceeding, like this, they could be im-
peached only by showing that the court did not have
jurisdiction to do what it did do in the particular case,
and this would have to appear on the face of the
record, or be shown from other parts of the record of
equal dignity. Covington v. Chamblin, 156 Mo. 587;
Camden v. Plain, 91 Mo. 129; Noland v. Barrett, 122
Mo. 181; Robbins v. Boulware, 190 Mo. 51; Macey v.
Stark, 116 Mo. 494.

GANTT, P. J.—This is an action under section
650, Revised Statutes 1899, to quiet the title to the
southwest quarter and the east half of section 12, town-
ship 23, range 11, Stoddard county, Missouri.

The plaintiffs stated that they were the owners in
fee-simple of the above described tract and that the
same was unimproved and unoccupied; that the de-
fendants claim some estate and interest in and to the
same, the exact nature of which is unknown to plain-
tiffs, but that said claims are adverse to the estate of
the plaintiffs in said lands. The prayer was that the
title might be ascertained as to the respective interests
of the plaintiffs and the defendants in and to said real
estate.

The answer of the defendants was a general de-
nial, and plea of the ten and twenty-four and thirty-
year Statute of Limitations, and a plea that the plain-
tiffs are estopped from claiming the lands by reason
of their abandonment of them and their failure to pay
any taxes on them for more than twenty-five years and
by other laches.

On the trial in the circuit court the defendants had
judgment quieting the title in them and the plaintiffs
appealed.

Jesse B. Liggitt was the common source of title. The defendants derived their title to the lands through an administrator's deed dated April 23, 1878, recorded June 10, 1879, and made by Nancy Liggitt and James Gregory as administrators of the estate of Jesse B. Liggitt, deceased, to Elizabeth Henson, conveying the lands in controversy, and by mesne conveyances therefrom. The female plaintiffs are the heirs of Jesse B. Liggitt and assert that the administrator's deed under which defendants claim was void when made. The validity of that deed is the question at issue in this case, in so far as the paper title is concerned.

Jesse B. Liggitt died in September, 1873, and left as his only heirs three daughters, Jennie, Clara and Altha Liggitt. Jennie married her co-plaintiff Charles Gregory in 1880; Clara married J. B. Terry in 1881; Altha married Samuel Rhodes in 1881. Jesse B. Liggitt also left surviving him his widow Nancy Liggitt. James Gregory and Nancy Liggitt were the duly appointed and qualified administrators of the estate of Jesse B. Liggitt.

The defendants offered in evidence the administrator's deed to the lands in question, which was in due form, and thereupon the plaintiffs made their objections thereto and in support of their objections the plaintiffs read in evidence the petition filed by the administrators on the first day of February, 1875, in the probate court of Stoddard county, asking for the sale of the lands in controversy and five hundred acres of other lands, describing them all, for the purpose of paying the debts of the said estate. This petition was in proper form and no objection has been made to it by the plaintiffs in this cause. The plaintiffs then offered in evidence the order of publication made by the probate court of Stoddard county on the first day of February, 1875, upon the said petition. This order of publication recited the filing of the petition for an order of sale, and it was ordered that all persons interested

in the estate of the said deceased be notified that application as aforesaid had been made and that unless the contrary be shown on or before the first day of the next term of this court to be held on the 26th day of April next, an order would be made for the sale of the whole of said real estate, or so much thereof as would be sufficient to pay the debts of the deceased, and it was further ordered that notice be published by posting up ten handbills in ten different public places in said county at least twenty days before the first day of the next term of the court and that publication in the newspapers be dispensed with. The plaintiffs insisted that this order of publication was void and was not a legal notice to the plaintiffs who were the heirs of Jesse B. Liggitt, because the same was directed to be made returnable on a day when no court was by law required to be held, to-wit, on the 26th day of April, 1875. This objection presents the first question for our determination.

The time fixed by statute for the holding of the April term of the probate court in said county, at the time this order of publication was made, was the second Monday in April. The statute in force at that time, however, as the statutes of this State have always done, gave the probate court the power to change the time of holding its regular terms of court, and it was shown at the trial that the court by order of record had changed the time for the April term of said court from the second to the fourth Monday in April. Plaintiffs insisted in the circuit court, and still insist here, that the Legislature could not pass a valid act giving the courts the power to fix the times for holding their terms, and that the statute authorizing the courts to do so was unconstitutional as delegating legislative powers to the judicial department. After this order of publication was made, but before it was published, the Legislature of this State, by an act approved Feb-

ruary 11, 1875, Laws 1875, p. 425, changed the time for holding the April term of said probate court to the first Monday of April, and directed that all "writs, process and notices made or to be made returnable" to the next term of said probate court should be made returnable at that time, and further provided that said act should take effect and be in force from and after its passage. The plaintiffs introduced the proof of the publication of the above order of publication, which showed that the order was published exactly as the original order was made except that the words "26th day of April next" were changed to "5th day of April next," evidently to conform to the aforesaid act of the Legislature of February 11, 1875. The plaintiffs insisted then and now, that the order actually published was changed from the order really made, by the clerk of the probate court. Plaintiffs also introduced the record of the probate court showing that on the 8th of March, 1875, the court adjourned until the next regular term, to-wit, the 5th day of April, 1875, and the record also was introduced showing that the court convened on the 5th of April, 1875, pursuant to adjournment. The plaintiffs also in support of this objection to the said deed introduced the order of sale made on Tuesday, April 27, 1875. This order recited the filing of the petition for the sale of the real estate in controversy and that publication had been made of the said order and the court having heard said petition and being satisfied that the personal estate was not sufficient to pay the debts, it was ordered that the administrator sell the land, describing it, for one-fifth in cash, etc., at private sale. The specific objection alleged to this order is that it contains no finding or recital of the amount necessary to be raised by a sale of the real estate. It appears that the sale was not made under this original order, and on March 27, 1877, a second order of sale was made, reciting that the previous order had not been complied with and directing that the adminis-

trator sell the said lands at public auction on the 25th
day of April, 1877. The objection made to this second
order was that it changed the terms of the sale from a
private to a public sale without notifying the heirs of
Jesse B. Liggitt, but there was no affirmative showing
that such notice was not given. On the 25th of April,
1877, a further order was made that the sale of real
estate belonging to said estate and remaining unsold,
should be continued until Wednesday after the first
Monday in September next ensuing. The objection to
this order was that it did not contain the description of
the land referred to. The plaintiffs also introduced in
support of their objection to the deed the report of the
sale showing that after due notice the administrators
on the 5th day of September, 1877, at public sale sold
the lands in controversy and that Elizabeth Henson
became the purchaser thereof and that Nancy Liggitt,
the mother of the plaintiff, became the purchaser of
other of said lands described in the petition. This re-
port of the sale is not objected to on any specific
ground.

We will examine these various objections to the
deed in the order in which they were made.

I. Learned counsel for the plaintiffs insists that
the original order of publication which required all
persons interested to appear on or before the first day
of the next term of said court to be held on the 26th
day of April next, was void, because by the statute in
force at that time, the said court was required to be
holden on the second Monday in April in each year.
There is no dispute that the statutes providing for the
terms of that court required the said court to hold an
April term commencing on the second Monday in
April, but it is also conceded that by section 11 of the
Act of March 19, 1866 (Laws 1865-6, p. 86), it was pro-
vided that the judge of probate should at any time
change the terms of his court as thereby established

to such times as he should deem for the convenience of the citizens of that county. Provided, that whenever he thought ·proper to change the term of said court he should make the order of record stating such change and the times when said terms should commence, and publish the same in some newspaper in his county. It is also conceded that the term of the probate court of Stoddard county, at the time this order of publication was made, had been fixed by order of the court for the fourth Monday in April, instead of the second Monday. So that after all, the real question is, was the act of the Legislature which permitted this change of the terms of the court by the probate court constitutional or unconstitutional. The plaintiffs assert that it was unconstitutional.

In Overton v. Johnson, 17 Mo. 451, GAMBLE, J., speaking for this court, said: "It is next objected to the proceedings that the order made by the county court on the presentation of the petition, for the notification of persons interested was made at what is called the April term, when no such term existed by law; and required their appearance on the first Monday in June, when no such term could possibly have existed under the statute, as the terms of the county courts were required to be held once in three months. It may be a sufficient answer to this objection, as it is presented on this record, that it does not appear that the court may not have changed the terms as they were fixed by law, *under the power which the statute conferred upon them.* It is undoubtedly true that when an order is made for the notification of parties interested in an estate, to appear and show cause against the prayer of the petition, the statute requires that the notice shall be for the first day of the next term of the court; but this record does not show that the then next regular term of the court may not have commenced on the first Monday in June." Counsel for the plaintiffs concede that this court held that county courts possess this

power to change the date of holding their regular term. Indeed, the eminent counsel in the Overton v. Johnson case conceded that they had such a power. The rule announced in Overton v. Johnson was reaffirmed in Adcock v. Lecompt, 66 Mo. 43, and Camden v. Plain, 91 Mo. 130. It is true, as counsel for plaintiffs says that those acts were not assailed in either of those cases as unconstitutional, and counsel for the plaintiff makes the point in this case for the first time in the juridical history of the State. The basis of this contention is found in the Constitution of Missouri, article 3, which provides: ''The powers of government shall be divided into three distinct departments—the legislative, executive and judicial—each of which shall be confided to a separate magistracy, and no person, or collection of persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others, except in the instances in this Constitution expressly directed or permitted.''

That the Legislature has the power to fix the times for holding the regular terms of court and that this court has held that the judicial power can only be exercised at the time and places prescribed by law, is the recognized law of this State. That the Legislature has always exercised the power to provide the terms of courts where not fixed by the Constitution, is conceded, but the question here is whether the act of the Legislature, after fixing the time for the holding of the probate courts of Stoddard county, could not confer upon that court the power to change, by an order of record, the time for the holding of the said court to suit the convenience of the people of that county. When the framers of the Constitution used the words ''Executive, Legislative and Judicial'' in defining the separation of the powers of government, no definition of these powers was given in the Constitution, and considering the general nature of that instrument, cer-

tainly none was expected. The purpose which the people had in view in keeping separate the different departments of government is well known to have had its origin in the jealousy of the framers of our State and Federal governments and the great solicitude to keep them separate in order to preserve the liberty of the people. As was said in Merrill v. Sherburne, 1 N. H. l. c. 208, "It was well known and considered that 'in the distinct and separate existence of the judicial power consists one main preservative of the public liberty;' that indeed, 'there is no liberty, if the power of judging be not separated from the legislative and executive powers.' In other words that 'the union of these two powers is tyranny;' or, as Mr. Madison observes, may justly 'be pronounced the very definition of tyranny;' or, in the language of Mr. Jefferson, 'is precisely the definition of despotic government.' One prominent reason for creating the judicial distinct from the legislative department was that the former might determine when laws were repugnant [to the constitution], and so operate as a check upon the latter, and as a safeguard to the people against its mistakes or encroachments." But notwithstanding the purpose of the people in the framing and adoption of our constitutional provision to keep the several departments of our State government separate and independent in the spheres allotted to each, a careful study of the whole Constitution will, we think, demonstrate that it was not the purpose to make a total separation of these three powers. This is evident from the fact that the executive or Governor is required to unite with the Legislature in the passage of laws by giving his assent or approval thereto, and the judicial department is made subject to the act of the Governor in the appointment of judges to fill vacancies in the courts, and to make appointments in the first instance in the event of the increase of the number of judges, and to appoint judges in the first instance to the several

courts of appeal when created. The general principle was happily expressed in the Constitution of New Hampshire, wherein it was declared: "In the government of this State, the three essential powers thereof, to-wit, the legislative, executive and judicial, ought to be kept as separate from, and independent of, each other as the nature of a free government will admit, or as is consistent with that chain of connection that binds the whole fabric of the Constitution in one indissoluble bond of union and amity." In the practical administration of the government under these constitutional provisions, it is often a nice question to which department of the government a particular function should be ascribed, and it has often been arrived at by the courts by consideration of the long practice and custom of recognizing a certain act as judicial, legislative or executive. To the Legislature by common consent and long usage has been conferred the power not only to enact laws in the technical legal sense of a law, but also to provide ordinances and regulations for the public good. Many of these partake largely of mere administrative functions and many instances occur in which the Legislature has confided to other branches the performance of duties, which, in a particular sense, might be denominated legislative, which no one has ever thought or contended violated the great principle of independence between the separate departments of the government. Thus while it is said that the Legislature cannot delegate legislative powers, from the very origin of the government of this State the Legislature has delegated to municipal corporations the power to pass and enforce proper ordinances for the government of the various cities and towns of this State, and instead of it being considered a violation of the Constitution it has been deemed in perfect accord with the great fundamental principle of local self-government to confide to the several municipalities the enactment of ordinances suitable to the various

municipalities.  Thus while in a broad and constitutional sense the manner in which the right of eminent domain shall be exercised rests with the Legislature, it may be, and in point of fact generally is, effected by a delegation of the legislative power to an agent and most generally to the courts.  In State ex rel. Lionberger v. Tolle, 71 Mo. 645, the power of the circuit court of the city of St. Louis to receive bids and award the publication of all advertisements, judicial notices and orders of publication required by law to be made, to the newspaper making the lowest bid, was challenged as violating this section of the Constitution, in that it imposed upon the court a duty which was not judicial.  And this court through HOUGH, J., said: "It is not always easy to distinguish between the powers and duties which may, and those which may not, be assigned by the Legislature to the several departments among which the Constitution requires the distribution of the powers of government to be made.  This difficulty has given rise to much litigation, and has induced the courts to adopt very liberal views in determining where any power not easily classified may be properly lodged.  In State v. Harmon, 31 Ohio St. 250, it was said: 'Whether power in a given instance ought to be assigned to the judicial department, is ordinarily determinable from the nature of the subject to which the power relates.  In many instances, however, it may appropriately be assigned to either of the departments.'  Judge COOLEY, in his work on constitutional limitations, speaking of the division of the powers of government, says: 'If it is difficult to point out the precise boundary which separates legislative from judicial duties, it is still more difficult to discriminate, in particular cases, between what is properly legislative and what is properly executive duty.  The authority that makes the laws has large discretion in determining the means through which they shall be executed.'  [P. 138, 4 Ed.]  While the foregoing obser-

vations were intended by the author to apply more particularly to legislative encroachments upon the executive department, yet they are equally applicable to the case under consideration. *Vide,* also, Ex parte Robinson, 6 McLean 359; Ex parte Gist, 26 Ala. 161; Walker v. Cincinnati, 21 Ohio St. 49. The power to make rules of court conferred by the 27th section of the Constitution above cited, is itself not strictly a judicial power. Acts done by courts under rules established by themselves are, of course, judicial in their nature; but to prescribe a rule of action properly belongs to the law-making power. To decide upon the rights of parties under a rule prescribed belongs to the judicial power. Yet, as it is essential to the proper administration of justice that the courts shall have power to supplement the rules of pleading and practice enacted by the Legislature by such rules, not inconsistent therewith, as experience may from time to time demonstrate to be necessary to the proper exercise of their functions, the power to make such rules, has always been upheld, and is conferred by statute upon all courts of record." Accordingly the act in that case was held to be constitutional.

The foregoing statement is so complete and conservative that little can be added to it. As said by COOLEY, J., the authority that makes the laws has large discretion in determining the means through which they shall be exercised. While every one concedes that the Legislature has the power to provide the number of terms, and the times when they shall be held, of the county courts and probate courts, it would be a startling proposition for this court to hold at this late day that the power always given in this State by the Legislature to county courts to change the date for the beginning of the terms of those courts was and is unconstitutional. Thousands of titles in this State rest upon that provision of our laws and to now hold that the power given to the county courts to change the be-

ginning of their terms was unconstitutional would create interminable confusion, and cast clouds upon titles which have never been questioned by the lawyers of this State.

In considering whether the Legislature transcended its constitutional power in authorizing the probate court of Stoddard county to change the time for the holding of said court, we may justly take into consideration the universal opinion of the courts, and of the bar of the State, that said act was constitutional, from the fact that, in all the history of the State, similar acts have never been questioned. In Venable v. Wabash Railway Company, 112 Mo. 103, it was said by this court: "The common consent and opinion of the legal profession in this State has been that it was not necessary to make a wife a party in order to bar her inchoate right of dower, either as to a railroad right of way or other public highway. This of itself is a very pregnant circumstance, and very good evidence of what the law is. [State v. Meyers, 99 Mo. l. c. 114; Sedgwick on Constitutional and Statutory Law (2 Ed.), 213, *et seq.*, and cases cited.] In a case in the House of Lords, on the statute 27 Henry VIII, Lord HARDWICKE said: 'The opinion of conveyancers in all times, and their constant course, is of great weight. They are to advise, and if their opinion is not to prevail must every case come to law? No; the received opinion ought to govern.' And Lord MANSFIELD said: 'Consider also the usages and transactions of mankind upon it [the statute]; the object of all laws, with regard to real property, is quiet and repose.' [Earl v. Drury, 2 Eden's Ch. 61.] In Scanlan v. Childs, 33 Wis. 663, the court says: 'The general understanding of a law and constant practice under it [for a period of over twenty years], by all the officers' charged with the execution of it, 'unquestioned by any . . . public or private action,' is 'strong if not conclusive evidence of its true meaning.' " In view of the foregoing cita-

tions, and in view of the universal acceptance and acquiescence of the bar and the courts of this State in their constitutionality, the acts of our Legislature which confer upon the county and probate courts the power to change the beginning of the terms of said courts as public convenience may require, by entering orders of record to that effect and giving due notice thereof, ought not to be, and are held not to be unconstitutional. [Shipp v. Klinger, 54 Mo. 239; State ex rel. v. Laughlin, 75 Mo. 147.]

Accordingly we hold that the order of publication was not void because it was not made returnable to the second Monday of April, 1875, but was properly made returnable in the first instance to the fourth Monday in April, 1875, as the court had changed the time of the meeting of the April term from the second Monday to the fourth Monday.

II. But it is insisted that the order of publication was not published as made by the court, but was changed from April 26th to April 5, 1875. In the consideration of this point, it is necessary to remember that after the order of publication was made the Legislature, by an act approved February 11, 1875, changed the time for the holding of the April term of said probate court to the first Monday of April, and directed that all writs, process and notices made or to be made returnable to the probate court of Stoddard county next after the taking effect of this act, should be made returnable to the first term of the county court of Stoddard county held for the transaction of the probate business, and that act took effect from the date of its passage. Counsel concedes that the order of publication should have been made returnable to April 5, 1875, but contends that the clerk had no power to amend the order or to make it returnable at a different date from the one which the court had already made.

That it was perfectly competent for the Legislature to change the term of court and provide that

process already issued and to be issued returnable to the fourth Monday of April should be returnable to the first Monday is fully established by the decisions of this court. [Carson v. Walker, 16 Mo. 68; Freeman v. Thompson, 53 Mo. 183.] In this last mentioned case the writ of attachment and order of publication were made returnable to the term commencing the fifth Monday after the second Monday in March, 1864, which would be April 17th, but the Legislature by an act approved January 26, 1864, changed the time of holding the Polk Circuit Court to the fourth Mondays of March and September. Section 2 of that act provides that "all writs, process and proceedings made returnable to the courts of either of the above named counties, shall be returnable to the courts held under this act." This act took effect on its passage. The court said: "The respondents now contend that as the order of publication was not issued and published until February 9, 1864, fourteen days after the law took effect, the publication was in violation of the law, as the order required the defendants to appear on the fifth Monday after the second Monday in March, that is, the 17th day of April, while the said section of the act referred to required all writs, process and proceedings made returnable to the courts as then existing should be *made* returnable to the term fixed by said act. But there is no such provision and that is not the language of the act, which in express terms refers to writs, process and proceeding 'made returnable' to the terms of the court as originally established and provides that such writs, process, etc, should 'be returnable to the courts under this act.' The times of holding the terms of the courts of the seventh circuit were changed by this act, and it is very evident that the Legislature intended by operation of law to lengthen, if necessary, the time in which writs, process, etc., might have to be returned in some cases, and to shorten it in others. And this was perfectly competent

for that body to do.'' That either the clerk or any one else has a right to change or amend the record of a court, no one will contend. But the question here is of a different import. Here the court had ordered a publication made returnable to the fourth Monday of April, 1875, in compliance with the law as it then existed, but before that order of publication was published, the Legislature intervened and passed the act of February 11, 1875, which by its terms required that "all writs, process and notices made or to be made returnable to the probate court of Stoddard county, next after the taking effect of this act, *shall be made returnable* to the first term of the county court of Stoddard county, held for the transaction of probate business." The order of publication as entered upon the record brought it directly within the terms of the act, and the question is then, what effect did the law which prescribed that this order theretofore made should be made returnable to the first term of the county court thereafter have? The order of publication is a substituted process for the ordinary writ of summons. It is clearly process and notice within the meaning of the act of February 11, 1875. What then was the duty of the clerk, to publish the order as originally entered upon the record, or was he required by the law to make that process which the court had ordered issued *returnable as the law directed it?* Clearly it was for the benefit of the heirs of this estate that the order should be published giving them the correct date of the meeting of the court, and the only question that can now arise is, was this act of the clerk made in pursuance of and in exact conformity to the statute, unauthorized and void? It will be observed that the law did not require that the courts should change their order of publication, and the various writs of summons that had been already issued, but required that process and notice which had been made returnable as the law existed when they were

made, should be returnable to the new term prescribed by the statute. In our opinion it was not an unauthorized act on the part of the clerk. The law must be construed as written into that order and the clerk simply obeyed the law. The change was not the clerk's change, but was the change made by the law itself, binding alike upon the court and the clerk and the parties to suits to be affected by that change. While it is true that the plaintiffs offered testimony showing that there was only one order of publication and that was the one designating the 26th of April as the day of return, there was no showing that the probate court itself had not made a general order directing the clerk to conform the orders of publication and writs to the law, as changed and amended by the Act of February 11, 1875. In our opinion the sale was not void on this account, but on the contrary that the clerk correctly performed his duty when he made the order of publication conform to the new act.

III.    The deed is also assailed on the ground that the order of sale did not contain a finding of the amount necessary to be raised by a sale of the real estate. In support of this contention the learned counsel for the plaintiffs cites section 26, page 97, of Wagner's Statutes 1872. That section provides that when the petition, accounts, lists and inventories shall be filed, the court shall order that all persons interested in the estate be notified thereof, and that unless the contrary be shown on the first day of the next term of the court, an order will be made for the sale of the whole or so much of said real estate as will pay the debts of the deceased. There is nothing in this provision of the law that requires the court to find and state in its judgment the amount of the debts. The only thing that the court could do or was required to do was to find that the personal assets of the estate were not sufficient to pay the debts due and owing by the said estate, and to order a sale of the land or so much thereof

as was necessary to pay the debts and this the court did.

In support of this proposition the learned counsel cites Williams v. Bollinger, 122 Mo. App. 450, and Redman v. Adams, 88 Mo. App. 534. The Redman case simply decides that there was no proper bill of exceptions filed and therefore the judgment of the lower court was presumed to be correct. It throws no light upon the question at bar. In Williams v. Bollinger it was held that the judgment of a justice of the peace in an action for debt, which does not mention the amount for which the judgment is rendered, was void upon its face. Cases cited from other jurisdictions being upon statutes of those States do not change the construction which we have put upon this statute, and which is believed to be the universal interpretation thereof.

IV. It is next insisted that the renewal order of sale made on March 27, 1877, under which the lands in suit were sold, is void, because the probate court changed the terms of sale from a private to a public sale, without notice to the heirs of Liggitt.

Administrators' sales under orders of the probate court are judicial sales, and in Tutt v. Zenir, 51 Mo. 431, this court held that it was perfectly competent for the county court to modify an order of sale made by itself so as to authorize property which had been ordered to be sold at public sale to be sold at a private sale, and that decision has never been questioned or criticised in any subsequent case in this court. Judicial sales in contemplation of law are made by the court itself through its receiver or administrator and we can discover no reason why the court may not in proper case modify or change its order. [Noland v. Barrett, 122 Mo. l. c. 189.]

V. It is insisted that the sale was void because it was illegally adjourned from April 25, 1877, to Sep-

tember 15, 1877, by an order which does not describe the land.

As to the objection that the order did not describe the land, we think there is no merit in this claim, because both the original order of sale and the renewal order as made on March 27, 1877, specifically described the land, as also did the petition; these were the orders which directed the administrator to sell, and it was unnecessary for the court to set forth a full description of the land again in its continuing order. That order described the estate in which it was made and ordered that the sale of the real estate belonging to said estate and remaining unsold be continued until the first Monday in September next ensuing. The order had already been made for the sale of the land and the only purpose of this order was to continue the sale. Under the repeated rulings of this court the probate court having acquired jurisdiction to sell these lands for the payment of the debts by proper petition and notice, it had jurisdiction to proceed in any manner given to it by the law until a sale was effected, or until it had found and decreed that the land should be not sold. If there was any irregularity whatever in said continuance, we think it was cured by the approval of the sale.

Counsel in support of his contention that adjournment of the sale was fatal to the subsequent selling thereof, cites a number of cases in partition, but we have been unable to find any case in which an administrator's sale was held void because not made at a particular term. The statute does not require any such order and the order in this case does not specify any particular term at which the sale should be made. The controlling provision on this point is that the administrator shall report at the next term after he makes a sale, his proceedings in the premises, and this he did. [Camden v. Plain, 91 Mo. 117; Stowe v. Banks, 123 Mo. 672.] In partition sales, it is expressly provided,

or was at the time of this sale, that they should be conducted as sales under execution, which are returnable to the next term of the court, and it was specifically provided that if the sale was not made the order must be renewed.  [G. S. 1865, p. 152, sec. 32.]

Finally, this sale was properly ordered by the probate court and approved and all irregularities occurring in the conduct thereof after the probate court had acquired jurisdiction and had ordered land sold for the purpose of paying the debts of Jesse B. Liggitt, were cured by the approval of the sale by the probate court.

In our opinion none of the reasons advanced for disturbing this sale, that was made some thirty-five years ago, afford any ground for disturbing the title in this collateral proceeding.  This administrator's sale was conducted in part by the mother of these plaintiffs, who was one of the administrators of that estate.  It appears that the plaintiffs lived with their mother until they were married, some five years later.  In the meantime these lands, which were at that time of little value, have advanced in price, owing to the general improvement in values in that section of the State, on account of the general system of drainage, and on account of the settling of the titles in that section in the litigation over large tracts of land in that portion of the State.  Having reached this conclusion we see no occasion for any discussion of the Statute of Limitations or any question of laches, inasmuch as we think the circuit court correctly held that the title to this land passed to the defendants under and by virtue of the probate proceedings, which we have examined and approved in this case, and the judgment of the circuit court is therefore affirmed.  *Burgess* and *Fox, JJ.,* concur.