484    SUPREME COURT OF MISSOURI.

Mo. Southern Ry. Co. v. Publ. Serv. Comm.

## MISSOURI SOUTHERN RAILROAD COMPANY, Appellant, v. PUBLIC SERVICE COMMISSION.

### Division One, July 9, 1919.

1. **PUBLIC SERVICE COMMISSION: Excessive Rates: Judicial Question.** The statute expressly gives the Public Service Commission authority to fix railroad rates, and in determining whether a proposed rate is lawful for the future the Commission does not act judicially, but simply ascertains what are the existing law and facts and applies to the particular utility the previously declared will of the Legislature.

2. **RAILROAD: Spur Tracks: Regulation of Rates by Commission.** As long as a railroad company operates spur or tram tracks in the public service it must do so subject to the regulatory powers of the Public Service Commission; and the fact that it operated them under tariff rates filed with the Commission is sufficient to warrant a finding by the Commission that it was using the two industrial spur or tram tracks, four or five miles long and connecting with its main line, in the public service; and that subjects them to regulation by the Commission.

3. ――――: ――――: **Included in Charter: Operation.** Whether the tariff rates to be charged by a railroad company for the carriage of freight over its spur or tram tracks are subject to regulation by the Public Service Commission is not to be made to depend on whether such tracks are included in its charter. The power of the Commission to regulate the freight charges of a railroad company is to be determined by what it does rather than by what its charter says. The Commission's supervision is not limited to lines constructed or owned by a railroad company, but is expressly by statute (Sec. 43, p. 580, Laws 1913) extended to lines operated by it; and the railroad company cannot escape lawful regulation by denying its right to operate a line which it in fact is operating in the public service under regularly published tariffs.

4. ――――: **Short-Haul Rates: Reasonable Variation.** A freight rate unlawful because in conflict with a valid constitutional inhibition is unreasonable. The short-haul clause of the statute is constitutional and a freight rate violative of it cannot be upheld on the ground that it is reasonable.

5. ――――: **Regulation of Rates: Estoppel: Agreement Upon Rates Charged.** A railroad company cannot rely upon estoppel under a contract void because in direct conflict with an express consti-

Vol. 279       APRIL TERM, 1919.       485

Mo. Southern Ry. Co. v. Publ. Serv. Comm.

tutional prohibition. Complainants are not estopped to ask the Public Service Commission to reduce within the maximum statutory charges the freight rates to be charged by a railroad company over its tram or spur lines, by the fact that, when the company was about to cease to operate the spur tracks, they entered into an agreement with it to pay charges in excess of the statutory maximum rates, and the company, in pursuance to the agreement, bought a special engine and expended five thousand dollars in putting the tracks in condition for hauling cars thereon.

Appeal from Jefferson Circuit Court.—*Hon. E. M. Dearing*, Judge.

AFFIRMED.

*J. B. Daniel* for appellant.

(1) The trams in question are not railroads within the meaning of the Public Service Commission Act, and the Commission has no authority to regulate or control the operation thereof or to prescribe rates to be charged for the transportation of freight over them. Palm v. Railroad Co., 17 N. Y. Supp. 471. (2) The complaint herein in effect alleges that appellant is refusing to transport freight which by law it was bound to transport, and that for freight it did transport over the trams it charged more than warranted by law. Whether or not these allegations are true are strictly judicial questions which the Commission, not being a court, had no authority to decide. City of Macon v. Pub. Serv. Com. 266 Mo. 490; State ex rel. Mo. Southern Ry. Co. v. Pub. Serv. Com., 259 Mo. 704, 727. (3) The operation of the trams by appellant was an *ultra vires* activity which the State might require it to stop, but it has no power to require appellant to continue such operation or to extend it as ordered by the Commission herein. Palm v. Railroad, 17 N. Y. Supp. 473. (4) If the Public Service Commission had power to regulate appellant's operation, such power only extended to reasonable regulation. It did not have power to destroy under the pretense of regulation, and its

486 SUPREME COURT OF MISSOURI.

Mo. Southern Ry. Co. v. Publ. Serv. Comm.

order herein cannot be upheld. North. Pac. Ry. Co. v. North Dakota, 236 U. S. 585; Railroad v. Pub. Util. Com., 95 Kan. 604; Norfolk & Western Ry. Co. v. Conley, 236 U. S. 605; Missouri v. Railroad Co., 247 U. S. 533; Kansas City & St. J. Ry. Co. v. Barker, 242 Fed. 310. (5) The complainant having filed with respondent a complaint to prevent the abandonment of service by appellant over the trams in question, and having thereafter, with other shippers and represented by counsel, agreed to the charge herein complained of, and having thereby caused appellant to expend large sums of money under said contract, was estopped to complain of said charges, and should on that account have been denied any relief under his complaint herein.

*A. Z. Patterson*, General Counsel, and *J. D. Lindsay*, Assistant Counsel, for Public Service Commission.

(1) Under the "Short Haul Clause" of the Missouri Constitution, and the construction thereof by this court, railroad companies are required to charge the same rates for transportation over branch lines as they charge on main lines, where the haul is of equal distance. Sec. 12, Art. 12, Mo. Constitution; McGrew v. Mo. Pac. Ry. Co., 230 Mo. 501. (2) The Public Service Commission has the power of regulation over all railroads operating as common carriers In determining whether a railroad is a common carrier, the important thing is what it actually does, not what its charter says it may do. Terminal Taxicab Co. v. District of Columbia, 241 U. S. 252; State v. Atlantic Coast Line Ry. Co., 56 Fla. 617, 32 L. R. A. (N. S.) 639; 4 R. C. L. p. 533; 33 Cyc. 651; Avingle v. S. C. Railroad Co., 29 S. C. 265. (3) The order of the Public Service Commission under review is not an unlawful exercise of judicial functions. Though merely an administrative agency, the Commission does, and of necessity must, take cognizance of the law, whether it appears in the form of Constitution, statute or judicial decision. State ex rel.

v. Roach, 190 S. W. 279; State ex rel. v. Le Sueur, 103 Mo. 262; State ex rel. v. Adcock, 206 Mo. 557.

BLAIR, P. J.—This is an appeal from a judgment of the Jefferson Circuit Court affirming an order of the Public Service Commission entered in the Matter of the Complaint of James M. Mooney v. Missouri Southern Railroad Company, 5 Mo. P. S. C. Rep. 250, which order, in so far as it is affirmed, required appellant to "refrain from charging or collecting for the transportation of carload shipments on the tram or spur tracks which connect with" appellant's main line and points on appellant's main line, "or between points on said trams, rates in excess of those in effect between other points on its main line, for the same distance." The trial court also accepted a suspending bond and suspended the operation of the order until the final determination of the case in this court.

Appellant owns and operates a line of railroad fifty-four miles long, which runs from Bunker in Reynolds County to Leeper in Wayne County. Connected with this line, appellant also operated two industrial spur tracks. Industrial Spur No. 1 is four and one-half miles long and joins the main line at Dairyville. Industrial Spur No. 2 is five miles in length and connects with the main line at Corridon. The evidence before the Commission and the Circuit Court showed appellant was imposing a switching charge of $7.50 for each loaded car switched between main line stations and points on either spur. This charge was in accord with tariffs filed by appellant, but never approved by the Commission, and seems to have originated out of an agreement between appellant on the one part and Complainant Mooney and other shippers on the other. The agreement was made at a conference between appellant and interested shippers, which conference resulted from a notice appellant gave in December, 1916, that it purposed to abandon Spur Track No. 1 and take up the rails. By the agreement appellant contracted to repair Spur Track

488          SUPREME COURT OF MISSOURI.

Mo. Southern Ry. Co. v. Publ. Serv. Comm.

No. 1 and operate it for two years, upon condition that the $7.50 switching charge be allowed appellant, provided the Public Service Commission would approve such charge. The shippers agreed not to oppose abandonment of the spur after two years, and that they would request the Commission to approve the switching charge. After this agreement was made, appellant expended about $5000 in repairing the spur tracks, and rendering serviceable a geared or "Shay" engine, which, because of heavy grades, it was necessary to use on the spurs. The evidence showed that the switching charge of $7.50 yielded $2910 per annum. Other facts appear in the opinion.

Appellant contends, in order, that (1) the spur tracks are not subject to regulation by the Commission; (2) the questions whether (a) appellant is charging more than a lawful rate, and (b) whether it can be compelled to operate the spurs, are purely judicial and the Commission has no jurisdiction to decide them; (3) the operation of the spurs was an *ultra vires* activity which the State might prevent, but which it could not compel, appellant to continue; (4) the Commission's power to regulate is a power to regulate reasonably and not to destroy; and (5) complainant, by his agreement, was estopped to question the validity of the switching charge.

I.     The question whether appellant could be compelled to continue the operation of the spur tracks is directly presented and decided in State ex rel.

**Compelled Operation.** Public Service Commission v. Missouri Southern Railroad Company, a companion case. Whether that question is presented by this record need not, therefore, be decided.

II.     It is contended the question whether the rate charged was excessive is a judicial question and one, therefore, which the Commission has no power to decide. The statute (Sec. 47, Laws 1913, p. 583) ex-

**Excessive Rates.** pressly gives the Commission authority to fix rates, and this court has held valid that dele-

gation of administrative power. [State ex rel. v. Public Service Commission, 259 Mo. l. c. 728.] It is true the Public Service Commission is not a court (City of Macon v. Commission, 266 Mo. l. c. 490; Rhodes-Burford H. F. Co. v. Union Elec. L. & P. Co., 2 P. S. C. 656); nevertheless, though it cannot exercise judicial functions, it must take cognizance of existing facts and the law. The act establishing it expressly requires it to do so. [Section 47, supra.] It is an "administrative arm" of the Legislature. Neither it, nor the Legislature, can ignore the Constitution, nor can the Commission proceed otherwise than in accordance with valid statutory provisions. In determining whether a proposed rate or change of rate is reasonable, i.e., whether it is the lawfully applicable rate for the future, the Commission does so in view of existing facts and controlling law. To do this it is necessary for it to ascertain what that law is, and in performing its legitimate function, i. e., putting to effect in respect to a particular utility the previous-declared will of the Legislature (Michigan Central Railroad v. Michigan R. R. Com., 160 Mich. 355), it must ascertain the existing facts, since these, under the law, determine the applicable rate. Such inquiries by the Commission are not judicial. [Prentis v. Atlantic Coast Line, 211 U. S. 210; State ex rel. v. Harty, 278 Mo. 685.] The fixing of rates for future business is legislative in character. The Commission's inquiry resulted not in a judgment respecting existing or past rates or rights, but in an order respecting rates to be charged in the future. That final act was the test of the character of the inquiry before the Commission (Louisville & Nashville R. R. Co. v. Garrett, 231 U. S. 298) and was not judicial. The point is ruled against appellant.

III. It is insisted the spur or trams are "not railroads within the meaning of the Public Service Commission Act" and not subject to regulation by the

490    SUPREME COURT OF MISSOURI.

Mo. Southern Ry. Co. v. Publ. Serv. Comm.

Commission. The Commission found, on the
**Regulation of Freight Rates.** evidence, that the spurs were parts of the appellant's railroad. They were being operated by appellant. Appellant had filed "tariffs, naming rates for the movement of all freight over the spur tracks in car loads, except live stock and perishable freight." Appellant's contentions are that (1) the spurs are not included in the charter; (2) only the track material is owned by appellant; (3) appellant has never operated them *as a part* of its railroad.

That appellant was operating these spurs is proved beyond doubt. That it operated them by means of an engine different from those on the main line is of no consequence on this question. The fact that it operated them under rates filed with the Commission is sufficient to warrant the finding that it was using them in the public service, and this subjects them to regulation. [Laws 1913, p. 557, et seq.; Secs. 2, 26, 27, 28, 29, 31, 35, 43, 47, 48.] As long as a carrier operates a line or spur it must do so subject to the regulatory power of the Commission. The charter is not in the record. Waiving that, the question whether a carrier must submit to regulation is settled rather by "what it does, not what its charter says." [Terminal Taxi Co. v. Dist. of Columbia, 241 U. S. 252.] The Commission's supervision is not limited to lines *constructed* by a railroad company nor to those *owned* by it; it is expressly extended (Sec. 43, Laws 1913, p. 580 and other sections, supra,) to "lines and property owned, leased, controlled *or operated*" by such company. In the circumstances it was of no importance, so far as rate regulation is concerned, who owed the fee or held the lease of the land over which the spurs extended. Appellant was conclusively shown to be operating the spurs in the public service under rates on file and was amenable to all lawful regulatory orders the Commission might make respecting rates on such spurs. It is in no position, as a reason for escaping regulation, to deny its right to operate a line which it is in fact operating in the public service

under regularly published tariffs. The Public Service Commission Act (Sec. 26, Laws 1913, p. 570) in express terms is made to apply to any common carrier transporting freight or passengers within this State, and in terms requires such carriers to file tariffs including every "route leased, controlled or *operated* by it." [Sec. 29.] The decision in Palm. v. Railroad, 17 N. Y. Supp. 471, involved a different question. Certain things, not done, were necessary in that case to make the spur there involved one constructed under the incorporating act, and the fare limitation of the act applied to roads *constructed under* the act. The act applicable in that case was penal in character and subject to strict construction. That case is not in point on the question before us.

IV. The Commission found that the rate being charged by appellant was violative of Section 12, Article 12, of the State Constitution, and Section 3173, Revised Statutes 1909, as construed in McGrew v. Railroad, 230. Mo. 496, 177 Mo. 533; State v. Railroad, 238 Mo. 23, 178 S. W. 1179, affirmed 244 U. S. 191.

Short-haul Rates.

This is the short-haul clause or rule. There is no doubt the rate was violative thereof. It is argued there was no proof the charge complained of was unreasonable and, therefore, no basis for the order abrogating it. We think that the people in adopting Section 12, Article 12, of the Constitution conclusively determined the unreasonableness of any rate out of harmony with its provisions. If a rate violative of it can be held valid because a court or commission may conclude it was a reasonable rate, as the term ordinarily is used, then the constitutional provision is of no force of itself. In our opinion a rate unlawful because of conflict with a valid constitutional provision is unreasonable.

V. It is said complainant is estopped by agreement and appellant's expenditures made thereafter. No cases

are cited and the point is not argued. Appellant cannot
**Estoppel.** rely upon estoppel under a contract void be-
cause of direct conflict with an express consti-
tutional prohibition. [10 R. C. L. sec. 112, p. 801;
Southern Ry. v. Prescott, 240 U. S. 1. c. 638; Melody
v. Great Northern Ry. Co., 25 S. D. 606; Shorman v.
Eakin, 47 Ark. 351; Railroad Co. v. Mottley, 219 U. S.
1. c. 479.]

The judgment is affirmed. *Bond, J.,* concurs in
paragraph IV and the result; *Graves, J.,* concurs in
separate opinion; *Woodson, J.,* absent.


GRAVES, J. (concurring).—Our learned brother
says that the Public Service Commission based its find-
ing upon the fact that the rate charged violated Section
12 of Article 12 of the State Constitution, as said pro-
vision of the Constitution has been construed by this
court in the several McGrew cases. As a judge I have
never sat in any of the McGrew cases. I was at one time
of counsel in the second of those cases, although on this
bench when it came here. For that reason I have
never participated in any of those cases. As a lawyer I
was never able to bring my mind to the court's logic
or law in those cases. Nor do I agree to them now.
However, the last of the line of McGrew cases decided
here was taken to the Supreme Court of the United
States, and that court has placed its stamp of approval
on the judgment of my brothers, and I feel constrained
now to yield to the construction given in those cases.

I am not convinced of the logic of those cases, but
the rule is now settled by the highest arbiter, and I
yield. With this explanation, I concur in the opinion.