**STATE TAX COMMISSION of Missouri, Samuel C. Jones, et al., Petitioners,**

v.

**ADMINISTRATIVE HEARING COMMISSION, et al., Respondents.**

No. 63065.

Supreme Court of Missouri, En Banc.

Nov. 9, 1982.

leased tangible personal property. The State Tax Commission now petitions pursuant to § 161.337, RSMo 1978,[1] for review of the Administrative Hearing Commission's declaratory judgment holding that the letter constituted an agency rule that was invalid because of procedural defects. The dispositive issue is whether the legislature may constitutionally grant the Administrative Hearing Commission the power to make such a determination. We conclude that the decision of the Administrative Hearing Commission must be vacated.

## I

The State Tax Commission on April 13, 1979, sent a letter to "all assessors and companies which lease tangible personal property" by which it adopted "the depreciated present day selling price new approach to value" for determining the valuation of leased tangible personal property. The State Tax Commission set forth a formula for computing valuation,[2] specified that it should be utilized for the 1979 tax year, and directed that "[c]ompanies which lease tangible personal property should immediately take steps to file a revised return for 1979 which contains the information consistent with" the use of the suggested formula.

Thereafter, on May 7, 1979, respondent International Business Machines Corporation (IBM) filed a complaint with the Administrative Hearing Commission seeking to overturn the action of the State Tax Commission. IBM alleged, among other things, that the State Tax Commission had promulgated the valuation formula without following the rulemaking procedures specified in § 536.021 and requested the Administrative Hearing Commission to declare the valuation formula to be "a capricious, arbitrary, unfair, illegal, factually baseless and void purported exercise" of the State Tax Commission's authority.

The State Tax Commission moved to dismiss the complaint on the ground that the Administrative Hearing Commission lacked

John Ashcroft, Atty. Gen., Richard L. Wieler, Asst. Atty. Gen., Jefferson City, Philip R. Baker, State Tax Com'n of Mo., Jefferson City, for petitioners.

James D. Eckhoff, Fordyce & Mayne, P.C., St. Louis, for respondents.

WELLIVER, Judge.

The State Tax Commission circulated a letter to assessors and certain taxpayers stating that it had adopted a described formula for determining the valuation of

---

1. All statutory references are to RSMo 1978 unless otherwise indicated.

2. The formula itself is unnecessary to our decision and need not be detailed here.

subject matter jurisdiction. That motion was overruled. At the same time, the Administrative Hearing Commission stayed implementation of the valuation formula and the order that the affected businesses file amended tax returns for 1979. The State Tax Commission then filed its answer. Among other things, the State Tax Commission admitted that its letter was issued without compliance with the rulemaking procedures required by § 536.021 but denied the applicability of that section.

The Administrative Hearing Commission held an evidentiary hearing. Both IBM and the State Tax Commission introduced numerous exhibits, and witnesses for both sides testified regarding the appropriateness and reasonableness of the valuation formula the State Tax Commission had adopted. The decision the Administrative Hearing Commission reached, however, focused only on the procedural, rather than the substantive, validity of the State Tax Commission's action. The Administrative Hearing Commission first found that it had the authority to render declaratory judgments[3] and then held that the State Tax Commission's letter "is a policy statement of general applicability and therefore a rule as defined under Section 536.010.4, RSMo 1978," and that it "has not been filed pursuant to Section 536.021.1, RSMo 1978, and therefore is void under Section 536.021.6, RSMo 1978." The State Tax Commission then filed this petition for review.

## II

The State Tax Commission argues that the Administrative Hearing Commission acted under an unconstitutional grant of power and thus was without subject matter jurisdiction. Respondents contend that this Court is without jurisdiction to hear this petition for review because the constitutional challenge was not raised below and has not been preserved for review, but they concede this Court's jurisdiction if the State Tax Commission is permitted to present its constitutional claim. See Mo. Const. art. V, § 3; § 161.337.

Subject matter jurisdiction concerns "the nature of the cause of action or the relief sought" and exists only when the tribunal "has the right to proceed to determine the controversy or question in issue between the parties, or grant the relief prayed." *Cantrell v. City of Caruthersville,* 359 Mo. 282, 290, 221 S.W.2d 471, 476 (1949). *See also Weatherford v. Spiritual Christian Union Church,* 163 S.W.2d 916, 918 (Mo. 1942). The defense of lack of subject matter jurisdiction may not be waived, *Sisk v. Molinaro,* 376 S.W.2d 175, 177 (Mo.1964); Rule 55.27(g)(3), and subject matter jurisdiction cannot be conferred by consent or agreement of the parties, *Simmons v. Friday,* 359 Mo. 812, 825, 224 S.W.2d 90, 98 (1949); *State ex rel. Lambert v. Flynn,* 348 Mo. 525, 532, 154 S.W.2d 52, 57 (banc 1941), by appearance or answer, *United Cemeteries Co. v. Strother,* 342 Mo. 1155, 1161, 119 S.W.2d 762, 765 (1938), or by estoppel, *Simmons,* 359 Mo. at 825, 224 S.W.2d at 98. The lack of subject matter jurisdiction may be raised at any stage in the proceedings, even for the first time in this Court. *State v. Rogers,* 351 Mo. 321, 325, 172 S.W.2d 940, 942 (1943); *Strother,* 342 Mo. at 1161, 119 S.W.2d at 765. The State Tax Commission

---

3. The Administrative Hearing Commission, in its conclusions of law, found that IBM's complaint "was filed pursuant to Section 536.050.2, RSMo 1978, which, when read in conjunction with Section 161.333, RSMo 1978, gives this Commission the power to render declaratory judgments in matters of this nature." The Administrative Hearing Commission's finding of jurisdiction followed a decision of the Circuit Court of Cole County that the Administrative Hearing Commission "does have jurisdiction over the action now pending before it and . . .

is not acting or threatening to act in excess of its jurisdiction." The circuit court reached that conclusion in an order quashing its preliminary writ of prohibition entered after the Administrative Hearing Commission denied the State Tax Commission's motion to dismiss for lack of subject matter jurisdiction. The State Tax Commission appealed the circuit court's order to this Court, but that appeal was subsequently withdrawn after this Court refused to stay the proceedings below pending its resolution.

properly raised its constitutional challenge, and we have jurisdiction.[4]

## III

In 1978 the legislature, by enacting S.B. 661, purported to empower the Administrative Hearing Commission to render declaratory judgments regarding the validity of agency rules.[5] S.B. 661, sec. 1, §§ 161.333, 536.050(2), 79th Gen.Assem., 2d Reg.Sess., 1978 Mo.Laws 441, 452–53, 459. Section 536.050(2) provides:

> The validity or applicability of any rule, regulation, resolution, announced policy, applied policy, or any similar official or unofficial interpretation or implementation of state agency authority, other than in a contested case or in a law enforcement proceeding, may be determined in an action to be brought by the filing of a written complaint with the administrative hearing commission by any interested person, or duly constituted entity, who is affected by such interpretation or implementation in a manner or to a degree distinct and different from other members of the general public. The complaint shall set forth the manner or degree in which the agency action or position affects the complainant, and the reasons for believing such action or position to be invalid or inapplicable to the complainant.

Section 161.333 provides:

> *Commission to make declaratory judgments respecting validity of administrative rules.*—The administrative hearing commission shall conduct hearings, make findings of fact and conclusions of law, and issue decisions in those cases involving complaints filed pursuant to the provisions of section 536.050, RSMo.

The Administrative Hearing Commission found that together these sections gave it the authority to render a declaratory judgment that the State Tax Commission's action was invalid. The State Tax Commission now asserts that these sections conflict with the Missouri Constitution.

In assessing the constitutionality of legislative enactments we are guided by several well-established principles. Statutes are presumed constitutional and will be held otherwise only if they clearly contravene some constitutional provision. *In re Trapp,* 593 S.W.2d 193, 202 (Mo. banc 1980), *appeal dismissed,* —— U.S. ——, 102 S.Ct. 2226, 72 L.Ed.2d 840 (1982); *Prokopf v. Whaley,* 592 S.W.2d 819, 824 (Mo. banc 1980). Statutes must, if possible, be construed as consistent with the Constitution. *Cascio v. Beam,* 594 S.W.2d 942, 946 (Mo. banc 1980); *State Highway Commission v. Spainhower,* 504 S.W.2d 121, 125 (Mo.1973). We are reluctant to declare statutes unconstitutional and must resolve all doubts in favor of their validity. *State ex rel. McClellan v. Godfrey,* 519 S.W.2d 4, 8 (Mo. banc 1975).

Article II, § 1 of the Missouri Constitution requires that

> [t]he powers of government shall be divided into three distinct departments— the legislative, executive and judicial— each of which shall be confided to a separate magistracy, and no person, or collection of persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others, except in instances in this constitution expressly directed or permitted.

The purpose of the doctrine of separation of powers, recognized as "vital to our form of government," *State ex inf. Danforth v. Banks,* 454 S.W.2d 498, 500 (Mo. banc 1970), *cert. denied,* 400 U.S. 991, 91 S.Ct. 452, 27 L.Ed.2d 449 (1971), is to prevent the abuses

---

4. Respondents do *not,* and could *not,* contend that the circuit court's decision that the Administrative Hearing Commission had jurisdiction, *see* note 3 *supra,* renders the issue here res judicata. The constitutional challenge raised here was not presented to and decided by the circuit court.

5. *The Administrative Hearing Commission below determined that the State Tax Commission's letter constituted a "rule" within the meaning of § 536.010(4). The instant reference to "rules" is intended to include the entire range of agency action set forth in § 536.-050(2).*

that can flow from centralization of power. While the autonomy of the legislative, executive, and judicial branches lies at the heart of our system of government, "a careful study of the whole Constitution will . . . demonstrate that it was not the purpose to make a total separation of these three powers." *Rhodes v. Bell*, 230 Mo. 138, 150, 130 S.W. 465, 468 (1910). Each branch constitutes only a part of a single government and must interact harmoniously with the other two. The independence of the branches must be "consistent with that chain of connection that binds the whole fabric of the Constitution in one indissoluble bond of union and amity." *Id.* at 151, 130 S.W. at 468. From a pragmatic standpoint it is obvious that some overlap of functions necessarily must occur. The complexity of modern government demands the delegation of some administrative and decisional authority to executive agencies because of their particular areas of expertise. Even the limited delegation of power, however, can result in the stifling of due process when agencies are required to exercise rulemaking, enforcement, and adjudicative functions concurrently.

Before the creation of the Administrative Hearing Commission, persons involved in agency disputes were bound by the strictures of the Administrative Procedure Act, *see* §§ 536.063–.140, and could seek independent judicial review of agency action only after a costly, time consuming, and generally futile hearing before the agency itself. Agency decisionmakers, sitting as both surrogate judges and jury, were usually the same persons who had already made the initial determination adverse to the individual. The agency's own counsel usually assumed the role of prosecutor, and its own investigators were often its chief witnesses. The system, as a practical matter, foreclosed a fair and impartial hearing, and "judicial review was effectively precluded by the requirement that the [individual] prove that the board's decision was not supported 'by competent and substantial evidence upon the whole record.'" Special Project, *Fair Treatment for the Licensed Professional: The Missouri Administrative Hearing Commission*, 37 Mo.L.Rev. 410, 438–39 (1972). The Administrative Hearing Commission was created in 1965, *see* S.C.S.S.B. 284, 73d Gen.Assem., Reg.Sess., 1965 Mo.Laws 277–80, to strike a balance between the need for separation of powers and the practical necessity of utilizing agency expertise. Its purpose, according to one of the drafters of the statute, was to eliminate the inequity inherent in the "prosecutor-judge-jury syndrome" by placing "a neutral lawyer in the position of holding a legal-like fair and impartial hearing in compliance with due process of the law." Special Project, *supra* at 412, 442 (quoting then Lt. Gov. Thomas F. Eagleton). The Administrative Hearing Commission, when first created, was assigned to the Division of Registration and Examination of the Department of Education,[6] not to the judiciary, and was given the authority to conduct hearings and make findings of fact and conclusions of law regarding questions of licensure for fifteen specified licensing agencies. *See* §§ 161.-252, .272, RSMo 1969. The 1978 amendments increased the number to eighteen,[7] *see* § 161.272, and amendments in 1978 and

---

**6.** The Administrative Hearing Commission was reassigned to the Department of Consumer Affairs, Regulation, and Licensing under the Omnibus State Reorganization Act of 1974, C.C.S. S.B. 1, § 4(4), 77th Gen.Assem., 1st Spec.Sess., 1973–74 Mo.Laws 530, 537.

**7.** Agencies specified in § 161.272(1) are the Missouri State Board of Accountancy; Missouri Board of Registration for Architects, Professional Engineers and Land Surveyors; State Board of Barber Examiners; State Board of Cosmetology; State Board of Chiropody and Podiatry; State Board of Chiropractic Examiners; Missouri Dental Board; State Board of

Embalmers and Funeral Directors; State Board of Registration for the Healing Arts; Division of Insurance; State Board of Nursing; State Board of Optometry; Board of Pharmacy; Missouri Real Estate Commission; Missouri Veterinary Medical Board; Supervisor of Liquor Control; Division of Health; and Department of Mental Health. In addition, subsection (2) provides that "[i]f in the future there are created by law any new or additional administrative agencies which have the power to issue, revoke, suspend, or place on probation any license, then those agencies are under the provisions of this law."

1981 also gave it the authority to hear appeals from tax assessments by the director of revenue, *see* § 161.273, RSMo Supp.1981. Historically, then, the Administrative Hearing Commission was created as an adjunct executive agency to exercise independent and impartial decisionmaking authority in disputes between agencies and those persons affected by their actions.

 This Court has recognized that executive agencies may exercise "quasi judicial powers" that are "incidental and necessary to the proper discharge" of their administrative functions, even though by doing so they at times determine questions of a "purely legal nature." *Liechty v. Kansas City Bridge Co.,* 162 S.W.2d 275, 279 (Mo.1942). Agency adjudicative authority, however, is not plenary. "[A]n administrative body or even a quasi-judicial body is not and cannot be a court in a Constitutional sense." *In re City of Kinloch,* 362 Mo. 434, 440–41, 242 S.W.2d 59, 63 (1951). "[U]nder our Constitution the lawmakers cannot vest purely judicial functions in" an administrative agency. *State ex rel. Missouri Pacific Railroad v. Public Service Commission,* 303 Mo. 212, 219, 259 S.W. 445, 447 (1924). Agency adjudicative power extends only to the ascertainment of facts and the application of existing law thereto in order to resolve issues within the given area of agency expertise. *Kinloch,* 362 Mo. at 440, 242 S.W.2d at 63; *Liechty,* 162 S.W.2d at 280; *Oren v. Swift & Co.,* 330 Mo. 869, 875–76, 51 S.W.2d 59, 61 (1932); *Harris v. Pine Cleaners, Inc.,* 274 S.W.2d 328, 333 (Mo.App.1954), *aff'd,* 296 S.W.2d 27 (Mo. banc 1956). *See Howlett v. State Social Security Commission,* 347 Mo. 784, 789, 149 S.W.2d 806, 809 (banc 1941); *DeMay v. Liberty Foundry Co.,* 327 Mo. 495, 515, 37 S.W.2d 640, 650 (1931); *Missouri Southern Railroad v. Public Service Commission,* 279 Mo. 484, 489, 214 S.W. 379, 380 (1919).

 The declaratory judgment is a judicial remedy. Declaratory judgments are sui generis and are neither strictly legal nor equitable, but they have an historical affinity with equity. *Walsh v. St. Louis County,* 353 S.W.2d 779, 785 (Mo.1962);

*Strype v. Lewis,* 352 Mo. 1004, 1007, 180 S.W.2d 688, 690 (1944); *Liberty Mutual Insurance Co. v. Jones,* 344 Mo. 932, 955, 130 S.W.2d 945, 954 (banc 1939). Courts in the exercise of their inherent powers rendered declaratory judgments long before the enactment of declaratory judgment statutes. 1 W. Anderson, *Actions for Declaratory Judgments* §§ 1–2, at 2–11 (2d ed. 1951); E. Borchard, *Declaratory Judgments* 137 (2d ed. 1941). This Court has recognized that a "declaratory judgment action provides an appropriate method of determining controversies concerning the construction of statutes and powers and duties of governmental agencies thereunder," *Regal-Tinneys Grove Special Road District v. Fields,* 552 S.W.2d 719, 722 (Mo. banc 1977), and that in a proper case courts have the right, independent of the Declaratory Judgment Act, *see* §§ 527.010–.130, to declare void the rules or regulations of an administrative body, *King v. Priest,* 357 Mo. 68, 79, 206 S.W.2d 547, 551 (banc 1947), *appeal dismissed,* 333 U.S. 852, 68 S.Ct. 736, 92 L.Ed. 1133 (1948). The declaration of the validity or invalidity of statutes and administrative rules thus is purely a judicial function. In *Gershman Investment Corp. v. Danforth,* 517 S.W.2d 33, 35 (Mo. banc 1974), we noted that the attorney general, as a member of the executive branch, "has no judicial power and may not declare the law.... [T]he judicial power of the state is vested in the courts designated in Mo. Const. Art. V, § 1. The courts declare the law." *See also Lightfoot v. City of Springfield,* 361 Mo. 659, 669, 236 S.W.2d 348, 352 (1951) (Public Service Commission "has no power to declare ... any principle of law or equity"); *State ex rel. Kansas City Terminal Railway v. Public Service Commission,* 308 Mo. 359, 373, 272 S.W. 957, 960 (1925) (Public Service Commission has no power to declare the validity or invalidity of city ordinance); *State ex rel. Missouri Southern Railroad v. Public Service Commission,* 259 Mo. 704, 727, 168 S.W. 1156, 1164 (banc 1914) (Public Service Commission has no power to declare statutes unconstitutional); *State ex rel. Missouri & North Arkansas Railroad v. Johnston,* 234 Mo. 338, 350–51, 137 S.W. 595,

598 (banc 1911) (secretary of state has no power to declare a statute unconstitutional).

By purporting to give the Administrative Hearing Commission the power to render declaratory judgments regarding the validity of agency rules, the legislature has attempted to elevate the Administrative Hearing Commission to the status of a court. Indeed, the Select Senate Committee on Administrative Rule Making, after reciting the language that it recommended constitute § 536.050(2), stated that "an aggrieved person would have his choice of following either the present provisions relating to declaratory judgment, or of filing a petition before the Administrative Hearing Commission. But he could not do both." *Report of the Select Senate Committee on Administrative Rule Making,* 78th Gen.Assem. 10–11 (1975). Unlike the United States Congress, however, the legislature cannot create a new species of court. The United States Constitution provides that "[t]he judicial power of the United States shall be vested in one Supreme Court, and in such inferior courts *as the Congress may from time to time ordain and establish.*" U.S. Const. art. III, § 1 (emphasis added). *See also id.* art. I, § 8, cl. 9. The Missouri Constitution has no comparable provision but provides instead that "[t]he judicial power of the state shall be vested in a supreme court, a court of appeals consisting of districts as prescribed by law, and circuit courts." Mo. Const. art. V, § 1. The legislature "has no authority to create any other tribunal and invest it with judicial power," *State ex rel. Haughey v. Ryan,* 182 Mo. 349, 355, 81 S.W. 435, 436 (1904), and cannot turn an administrative agency into a court by granting it power that has been constitutionally reserved to the judiciary.[8]

Sections 161.333 and 536.050(2) clearly and unambiguously attempt to confer upon the Administrative Hearing Commission a power equal to the power of courts to render declaratory judgments declaring the validity or invalidity of agency rules. "[W]here the language of a statute is plain and admits of but one meaning there is no room for construction." *Blue Springs Bowl v. Spradling,* 551 S.W.2d 596, 598 (Mo. banc 1977). We are compelled to hold that to the extent these statutes purport to authorize the Administrative Hearing Commission to render declaratory judgments, they contravene the Missouri Constitution.[9] The Administrative Hearing Commission was without subject matter jurisdiction, and its decree is therefore void.

Respondents would further argue that the purported grant of power to the Administrative Hearing Commission should be upheld because § 161.337 provides for judicial review and thus prevents the Administra-

---

8. S.B. 661 and its predecessors were the product of the hearings conducted by and the report of the Select Senate Committee on Administrative Rule Making. The recommendations of the committee were first embodied in S.B. 477, 78th Gen.Assem., 2d Reg.Sess. (1976) and S.B. 106, 79th Gen.Assem., 1st Reg.Sess. (1977), both of which failed final passage. The committee report leaves no doubt that the committee proceeded upon the assumption that Missouri legislative power to create administrative tribunals is equal to that of the United States Congress. The committee indicated that it chose to follow the longstanding trend of the United States Congress toward expansion of administrative jurisdiction and function. The language of the report indicated the committee's desire to create an entity in the nature of a small claims type tribunal to dispense declaratory judgments to anyone "directly affected" by agency action and anyone "interested in such interpretation or implementation in a manner or to a degree distinct or different from other members of the general public." *Report of the Select Senate Committee on Administrative Rule Making,* 78th Gen.Assem. 11 (1975).

9. (Personal comment of the author of the opinion.) It is much to my chagrin that I must acknowledge that as a senator I co-sponsored and helped pass S.B. 661, of which §§ 161.333 and 536.050(2) were a part. S.B. 661 repealed 53 sections and enacted 63 new sections in lieu thereof. In my concern with the broader purposes of the bill, I failed to foresee the ramifications of the two sections at issue in this case. Although I continue to believe that the bill as a whole was, and continues to be, valuable legislation, upon more careful consideration I have concluded that, to the extent herein stated, we as legislators exceeded our authority in enacting the sections involved here.

tive Hearing Commission from usurping the judicial function. That argument, carried to its logical conclusion, would mean that the legislative and executive branches could exercise powers constitutionally reserved to the judiciary as long as judicial review was available. Yet "[i]t is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison,* 1 Cranch (5 U.S.) 137, 177, 20 L.Ed. 60 (1803). The doctrine of separation of powers, which the people unequivocally embraced in adopting Article II, § 1 of the Missouri Constitution, would be reduced to a mere shibboleth were this attempted grant of power sustained.

The decision of the Administrative Hearing Commission is vacated, and the cause is remanded with directions that it be dismissed.

DONNELLY, C.J., RENDLEN, SEILER and HIGGINS, JJ., and MORGAN, Senior Judge, concur.

GUNN and BILLINGS, JJ., not participating because not members of the Court when cause was submitted.