**MISSOURI DEPARTMENT OF SOCIAL SERVICES, DIVISION OF MEDICAL SERVICES, Appellant,**

v.

**TRINITY LUTHERAN HOSPITAL, Respondent.**

**No. WD 52152.**

Missouri Court of Appeals, Western District.

July 16, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 27, 1996.

Application to Transfer Denied Oct. 22, 1996.

Kathleen Knepper, Missouri Department of Social Services, Jefferson City, Charles A. Miller, Caroline M. Brown, Covington and Burling, Washington, D.C., for appellant.

John C. Craft, Terry Allen, Thomas W. Rynard, Craft, Fridkin and Rhyne, Jefferson City, Larry J. Bingham, Seigfried, Bingham, Levy, Selzer and Gee, Kansas City, for respondent.

Before SPINDEN, P.J., and BRECKENRIDGE and ELLIS, JJ.

ELLIS, Judge.

The Missouri Department of Social Services Division of Medical Services ("DMS") brings this appeal challenging an order entered by the Circuit Court of Cole County awarding monetary relief to Trinity Lutheran Hospital ("Trinity"). Adopting findings of the Administrative Hearing Commission ("AHC") and citing *Department of Social Services v. Great Plains Hospital, Inc.,* No. CV194–918CC, and *Alexian Brothers of St. Louis, Inc. v. Department of Social Services,* No. CV194–0087CC, the circuit court found the DMS cap on Medicaid reimbursement for psychiatric services violated both the procedural and substantive provisions of the Boren Amendment to federal Medicaid law and was therefore invalid and void.

Prior to January 1, 1990, health care providers within the Missouri Medicaid program received reimbursements from DMS based on a per-diem rate. The per-diem rate was calculated for each provider by dividing the provider's total allowable Medicaid inpatient costs by its total Medicaid inpatient days of stay. 13 C.S.R. 70–15.010(3). The per-diem rate was a "blended" rate because it reimbursed providers at the same rate regardless of the type of care rendered. For example, an acute care hospital providing both acute and psychiatric care was reimbursed at the same rate for both types of care even though acute care often has a higher cost than psychiatric care. The per-diem rate included an adjustment which increased the rate to account for inflation, a process referred to as "trending forward." 13 C.S.R. 70–15.010(1).

In 1990, in response to what it considered to be runaway growth in psychiatric care

costs, DMS placed a ceiling or "cap" on the per diem reimbursement rates for certain inpatient psychiatric services.[1] Pursuant to 13 C.S.R. 70–15.010(15):

Effective for admissions beginning on or after January 1, 1990, certain psychiatric services will be reimbursed at the lower of the hospital's Title XIX per-diem rate or an inpatient psychiatric per diem of two hundred seventy-seven dollars ($277).... The inpatient psychiatric per diem is based on one hundred ten percent (110%) of the 1988 weighted average cost for instate, freestanding, nonstate-operated psychiatric units. The psychiatric rate will be adjusted by the inflation factor described in subsection (1)(F) granted on or after January 1, 1990.

The amount of the cap was determined by a DMS auditor who evaluated the psychiatric care costs reported by nine freestanding private psychiatric hospitals or psychiatric units participating in the Missouri Medicaid program. The auditor examined each facility's Medicaid cost reports for fiscal year 1988 and calculated a weighted average per-diem cost of $252.05. Certain ancillary costs were omitted from the analysis and the resulting per-diem figure because the DMS "Provider Manual" indicated DMS did not reimburse for such services.[2] The auditor increased this average per-diem cost figure by an inflation trend factor of 10% established by DMS based on the Gross National Product Implicit Price Deflator. Using this methodology, DMS determined the per-diem cap on Medicaid reimbursement to be $277.00 per patient day. As a result, a provider would be paid at the lower of its blended per-diem rate or the cap rate for the covered psychiatric services it rendered. DMS continued to include the lower cost psychiatric services when calculating the general per diem rate.

Since its initial calculation, the psychiatric cap has increased as a result of a few modifying calculations. Effective July 1, 1990, DMS increased all per-diem rates, including the psychiatric cap, by a trend factor of one

and one-half percent (1.5%), raising the cap to $280.42 per patient day. In 1992, utilizing the same methodology as the original cap, the same DMS auditor rebased the psychiatric cap with each provider's reported Medicaid costs for fiscal year 1990. The auditor calculated the 1990 weighted average cost to have been $326.37 per patient day. The auditor then trended this figure forward to arrive at a total per-diem reimbursement cap of $344.66 per patient day, effective October 1, 1992.

Trinity provides both acute care and psychiatric care services. Under the system as modified by the psychiatric cap, Trinity's normally higher cost acute care services were averaged with its lower cost psychiatric services to establish its per diem rate. However, under the psychiatric cap, Trinity would not receive its per diem rate for psychiatric services to the extent the per diem rate exceeded the cap.

On October 2, 1993, Trinity filed a complaint with the AHC challenging its reimbursement under the psychiatric cap. This complaint was amended on May 31, 1994, to allege violations of § 208.152, the equal protection clause of the Fourteenth Amendment, and the Boren Amendment. An evidentiary hearing was conducted on November 8–9, 1994. On July 26, 1995, the commissioner entered his Findings of Fact and Conclusions of Law. Without addressing Trinity's other claims, the commissioner found the psychiatric cap invalid and void in accordance with the decision of the Circuit Court of Cole County in *Great Plains Hospital, Inc.*. The commissioner determined that Trinity should be reimbursed for its psychiatric care services at the standard per diem rate.

DMS appealed to the Circuit Court of Cole County. In its Findings of Fact and Conclusions of Law the circuit court adopted the findings of the AHC and took judicial notice of *Great Plains Hospital, Inc.* and *Alexian Brothers of St. Louis, Inc.*. The circuit court concluded that DMS had violated § 208.152 and procedural and substantive provisions of

1. Only certain diagnosis codes are subject to the cap on per-diem reimbursement.

2. These excluded services included group therapy, individual therapy, occupational therapy, ad-

junctive therapy, speech pathology, psychological testing, and most other psychiatric treatments other than hospitalization or electroshock.

the Boren Amendment. The circuit court declared the psychiatric cap void and invalid as applied to Trinity and ordered DMS to reimburse Trinity for the deficiencies caused by the cap since October 18, 1993.

■ DMS first argues that the AHC erred in applying *Great Plains* because Trinity did not cite to *Great Plains* and because Trinity failed to allege procedural violations of the Boren Amendment in its complaint. DMS claims the AHC could not consider a legal theory not presented by Trinity.

■ Under § 536.070(6), the AHC is required to "take official notice of all matters of which the courts take judicial notice." § 536.070(6).[3] The function of the AHC is to apply existing law to the facts in order to resolve the issues before it. *State Tax Comm'n v. Administrative Hearing Comm'n,* 641 S.W.2d 69, 75 (Mo. banc 1982). In the case at bar, the commissioner was required to take judicial notice that the psychiatric cap had been declared invalid by the circuit court and to decide the case before it accordingly.

■ As to the further points brought by DMS, this court's ruling today in *Missouri Department of Social Services v. Great Plains Hospital, Inc.,* 930 S.W.2d 429 (Mo. App.1996), is dispositive. In *Great Plains,* we determined DMS violated the "findings" requirement of the Boren Amendment when it created the cap on reimbursement for psychiatric services and when making subsequent modifications to that cap, thereby rendering the cap invalid and void. As a result, we concluded Great Plains was entitled to be reimbursed the difference between what was paid by DMS under the cap and what it would have been paid without the cap. DMS does not raise any new arguments in this appeal, and no further discussion of the issues is necessary. Therefore, in light of our decision in *Great Plains,* we affirm the decision of the circuit court.

All concur.