**MISSOURI ETHICS COMMISSION,**
Appellant,

v.

**Ernest A. CORNFORD, Respondent.**

**No. WD 53613.**

Missouri Court of Appeals,
Western District.

Nov. 10, 1997.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jane Rackers, Asst. Atty. Gen., Jefferson City, for appellant.

Dennis L. Beckley, Hazelwood, for respondent.

Before SMART, P.J., and LOWENSTEIN and LAURA DENVIR STITH, JJ.

SMART, Judge.

The Missouri Ethics Commission ("Ethics Commission") appeals the judgment of the circuit court affirming a decision of the Administrative Hearing Commission ("AHC") that Ernest Cornford was not required to file a personal financial interest statement with the Ethics Commission pursuant to § 105.483 RSMo 1994.[1] The Ethics Commission contends on appeal that the AHC erred in its determination because the mere designation of Cornford as a "decision-making public servant" by the employing entity required that he file a financial interest statement under the applicable statutes. The Ethics Commission argues that Cornford's obligation to file the financial statement is not subject to review by the AHC. The Ethics Commission also argues that the AHC erred in finding that Cornford was not properly designated as a "decision-making public servant" because the evidence showed that he negotiated contracts and supervised a staff. Because we determine that the AHC had the authority to determine whether Cornford was required to file the financial interest statement in the first place, and because we determine that the decision of the AHC is supported by the evidence, we affirm.

Ernest Cornford is employed as the Finance Director for the University of Missouri—St. Louis. The University has designated Cornford as a "decision-making public servant" pursuant to § 105.450(6) for most of the years since Cornford assumed the position of Finance Director about six years ago. The University annually designates approximately 40 or 50 employees as "decision-making public servants." All "decision-making public servants" are required by § 105.483(12) to file a financial interest statement. In May, 1995, the Ethics Commission notified Cornford that he had not timely filed his 1994 statement, which was due by May 1, 1995. Cornford claimed that he had mailed his statement in mid-April of 1995. Cornford also mailed a copy of his financial statement to the Commission on May 23, 1995, with the notation "Copy of original form mailed in April '95." The Ethics Commission assessed a late filing penalty of $230.00. Cornford appealed to the Administrative Hearing Commission pursuant to § 105.963.4. The AHC, after hearing, determined that Cornford's position did not fall within the statutory definition of "decision-making public servant," and that therefore he had no duty to file the financial interest statement. The Ethics Commission then sought judicial review in the Circuit Court of Cole County. The circuit court affirmed the decision of the AHC. The Ethics Commission appeals.

In Point I, the Ethics Commission contends that the AHC erred because Cornford's designation as a "decision-making public servant" required that he file a financial interest statement. The Ethics Commission argues that neither it nor the AHC has any authority to independently determine whether a person has been correctly designated as a "decision-making public servant" by the appropriate entity or official.

Section 105.483(12) requires that a financial interest statement be filed by, "[a]ny person identified as a decision-making public

---

1. All statutory references are to Missouri Revised Statutes 1994, unless otherwise indicated.

servant pursuant to subdivision (6) of section 105.450." The referenced section provides:

(6) "Decision-making public servant", an official, appointee or employee of the offices or entities delineated in paragraphs (a) to (i) of this subdivision who exercises supervisory authority over the negotiation of contracts, or has the legal authority to adopt or vote on the adoption of rules and regulations with the force of law or exercises primary supervisory responsibility over purchasing decisions and is designated by one of the following officials or entities as a decision-making public servant:

(a) The governing body of the political subdivision with a general operating budget in excess of one million dollars;

(b) A state commission or board;

(c) A department, division, or agency director;

(d) A judge vested with judicial power by article V of the Constitution of the state of Missouri;

(e) Any commission empowered by interstate compact;

(f) A statewide elected official;

(g) The speaker of the house of representatives;

(h) The president pro tem of the senate;

(I) A board of regents or board of curators of a state institution of higher education;

Cornford has served as Director of Finance since approximately 1991. He testified that the University has been inconsistent in its designation of him as "decision-making public official." In 1995, he was not so designated, although he held the same position as in 1994. Mr. Cornford said he was not quarreling about having to file the statement, because he does not mind filing. He simply was contending that he did in fact file in a timely manner by depositing his statement in the mail before the deadline. However, Cornford also mentioned that individuals holding the same position at other campuses of the University of Missouri are not designated by their campuses as "decision-making public servants" and are not required to file the statement.

He testified that he is authorized to negotiate contracts in his position as Finance Director, but he does not exercise primary supervisory responsibility over purchasing decisions. He testified that the Director of Purchasing has supervisory and final authority over such contracts. The only evidence as to the nature of Cornford's duties was provided by Cornford's testimony and by the job description identified by Cornford. The job description prepared by the University's Human Resource office for Cornford's position sets forth the following:

CLASS TITLE: *DIRECTOR, FINANCE*

*BASIC FUNCTION AND RESPONSIBILITY*

To direct the operational, financial and personnel activities of the UMSt. Louis Finance Department, including the cashiering, accounting and student loan accounting offices.

*CHARACTERISTIC DUTIES*

Plan, assign, coordinate and review the work of office support staff engaged in cashiering, accounts payable and receivable and student loan operations.

Develop or assist in the development of administrative data systems, management systems, University policies and procedures, and records retention.

Coordinate and assist internal and external auditors regarding all audits performed at UM–St. Louis.

Advise and assist administration, faculty and staff in resolving departmental accounting-related problems.

Direct the preparation of adjusting entries on all cashiering, accounts receivable and student loan accounts.

Handle miscellaneous financial problems.

Perform special tasks and long-term projects as assigned by the Vice Chancellor Administrative Services.

Review accounts in Administrative Services to assure that budget guidelines and policies are followed.

Develop departmental budget request and written narrative.

Review, approve and monitor department operating expenditures.

Interview, select and evaluate professional and office support staff.

*SUPERVISION RECEIVED*

Direction is received from the Vice Chancellor Administrative Services.

*SUPERVISION EXERCISED*

Administrative and functional supervision is exercised over a professional and office support staff.

 In determining the issue raised by the Ethics Commission, we turn to the language of the applicable statutes. The issue is one of statutory construction. In construing a statute, we seek the plain and ordinary meaning of the statutory language, absent statutory definition of that language. *Moon Shadow, Inc. v. Director of Revenue*, 945 S.W.2d 436, 437 (Mo. banc 1997). We are guided by the legislature's apparent purpose in enacting the statute as worded. *Division of Employment Sec. v. Taney County Dist. R–III*, 922 S.W.2d 391, 393 (Mo. banc 1996). We seek to avoid a result which is absurd. *McCollum v. Director of Revenue*, 906 S.W.2d 368, 369 (Mo. banc 1995). Section 105.450 provides that a "decision-making public servant" required to file the financial statement is one who meets two criteria: 1) he or she exercises supervisory authority over the negotiation of contracts or has rulemaking authority or has primary responsibility over purchasing decisions, and 2) is designated as a decision-making public servant by one of the designated entities. Thus, we note that the fact of designation by an entity, standing alone, does not make one a "decision-making public servant." There is no indication here in the language that the mere designation of a person as a decision-making public servant is conclusive in creating a duty to file a personal financial statement. Also, § 105.963.4 clearly gives the AHC authority to review an assessment of a late filing fee by the Ethics Commission. That section provides:

Any person assessed a late filing fee may seek a review of such assessment or the amount of late filing fees assessed, at his option, by filing a petition with the administrative hearing commission, or without exhausting his administrative remedies

may seek review of such issues with the circuit court of Cole County.

Consequently, we see no basis for construing these statutes as the Ethics Commission urges. To do so would deprive the AHC of any authority to determine whether an individual must file a statement, and would leave the authority to make such a determination exclusively with the entity charged with the responsibility to designate such officers. The AHC's only authority under such a theory would be to determine whether the *amount* of the late payment fee was properly determined. The statute, however, clearly says the AHC may review the assessment *or* the amount of the assessment. The AHC is thus not limited to reviewing the amount of the assessment.

 The Ethics Commission argues that to construe the statutes as Cornford suggests would be to place on the Ethics Commission the burden of reviewing the status and duties of each individual to determine whether that individual is required to file. We cannot agree. It appears that a reasonable reading of the statutory language is simply that the Ethics Commission is required to assess a late fee when a person designated as a decision-maker fails to file a statement on time. Then, if the person so assessed wishes to contest the applicability or the amount of the fee, that person may appeal to the AHC. We know of nothing requiring the Ethics Commission to exercise independent judgment about whether a person is required to file a personal financial statement. The AHC was originally conceived as a body providing unbiased review of the actions of various licensing boards. But its scope has expanded over the years. *See Geriatric Nursing Facility, Inc. v. Department of Soc. Servs.*, 693 S.W.2d 206, 209–10 (Mo.App.1985). The AHC was created in 1965, "to strike a balance between the need for separation of powers and the practical necessity of utilizing agency expertise." *State Tax Comm'n v. Administrative Hearing Comm'n*, 641 S.W.2d 69, 74 (Mo. banc 1982). "Historically, then, the Administrative Hearing Commission was created as an adjunct executive agency to exercise independent and impartial decision making authority in disputes between agencies and

those persons affected by their actions." *Id.* at 75. The legislature clearly wished to provide a mechanism for resolution of disputes about the filing requirement with an impartial body in order to ensure the protection of due process rights. We conclude that the legislature intended to allow the AHC the authority to resolve contested issues concerning such assessments. Point I is denied.

■ In Point II, the Ethics Commission contends that the AHC erred in finding that Cornford was not a "decision-making public servant" because Cornford admitted that he negotiated contracts and supervised a variety of staff with financial responsibilities. Review of the AHC's decision is limited to whether the decision is "supported by competent and substantial evidence upon the whole record or whether it was arbitrary, capricious, unreasonable, unlawful or in excess of its jurisdiction." *Evangelical Retirement Homes of Greater St. Louis, Inc. v. State Tax Comm'n*, 669 S.W.2d 548, 552 (Mo. banc 1984).

■ Section 105.450(6) defines a decision-making public servant as an "official, appointee or employee of the offices or entities delineated in paragraphs (a) to (i) of this subdivision who exercises *supervisory authority over the negotiation of contracts*, or has the legal authority to adopt or vote on the adoption of rules and regulations with the force of law or exercises primary supervisory responsibility over purchasing decisions ...." (emphasis added). The evidence showed that Cornford engaged in negotiation of contracts, but there was no evidence that he had *supervisory authority over the negotiation of contracts*. It is apparent from the context of his duties that when Cornford talks about negotiating contracts, he is talking about the negotiation of terms and specifications of performance. The record does not show that Cornford had final authority to approve a contract or select a contractor. The evidence was that he did not exercise supervisory authority over the negotiation of contracts, but instead was subject to the supervision of the Director of Purchasing in that regard. There was also no evidence that he had rule-making authority or had supervisory responsibility over purchasing

decisions. The issue of whether the job responsibilities of Cornford were of such a nature as to require that he file a personal financial statement was a fact-specific issue to be resolved by the AHC.

Under our standard of review, we examine the record to see if the decision is supported by competent and substantial evidence upon the whole record. Section 621.145, § 536.140(2)(3). We defer to the AHC in its factual and credibility determinations where there is a conflict in the evidence. Section 536.140(3). We find that the AHC's determination was supported by the evidence, and was not arbitrary, capricious, unreasonable, unlawful or in excess of its jurisdiction. Consequently, we affirm the decision of the AHC.

Judgment is affirmed.

LOWENSTEIN and LAURA DENVIR STITH, JJ., concur.